**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| WAGO Verwaltungsgesellschaft mbH, | ) | CASE NO. 1:11-CV-00756 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| vs. | ) | <u>OPINION AND ORDER</u> |
| | ) | |
| Rockwell Automation, | ) | |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J.**:

Before the Court is Defendant Rockwell Automation, Inc.'s ("Rockwell") Motion for Judgment on the Pleadings ("Motion") (ECF DKT #41). The Court has reviewed the Motion, Rockwell's Memorandum in Support ("Mem.") (ECF DKT #41-1), Plaintiff WAGO Verwaltungsgesellschaft mbH's ("WVG") Opposition (ECF DKT #43), and Rockwell's Reply Memorandum ("Reply") (ECF DKT #44). For the following reasons, Rockwell's Motion is DENIED.

### I. FACTS

WVG's Amended Complaint (ECF DKT #12) ("Complaint") alleges that Rockwell has engaged in direct infringement, inducement of infringement, and contributory infringement of U.S. Patent No. 5,716,214 ("'241 Patent"), held by WVG. Specifically, WVG alleges infringement of Claims 1, 2, 3, and 4 of the '241 Patent, detailed below:

**A. Claim 1 of the '241 Patent**

1. An input/output device for a data bus, said device being located on a support rail and being adapted to be positioned adjacent other such devices, said device comprising:

a plurality of terminal points for the parallel wiring of bus parts, and

electronic means which connects bus parts to a serial data bus line and a power supply line, wherein the improvement comprises:

configuring the device with other such devices as series terminals, each having said electronic means, each device being located on the support rail either singly so as to define individual terminals, or in a group so as to define a terminal block having bus terminals;

said data bus line and power supply line being incorporated in the bus terminals and being slipped therethrough;

each bus terminal having at least one pressure contact in a lateral face thereof which extend towards an adjacent terminal of an adjacently positioned device, the contact automatically contacting the device to an adjacent device in the series direction of the bus terminals so that the bus terminals, which are located on the support rail, are connected to traversing data bus lines and power supply lines to form said bus terminal; and

at least one power bridging member for providing power to the parts communicated with the terminal points of the bus terminals, said power bridging member being fixedly disposed on the lateral face of the bus terminal and the terminal block, and engaging automatically with another power bridging member of an adjacent device when the bus terminals are mounted on the support rail.

**B. Claim 2 of the '241 Patent**

The I/O device as set forth in claim 1, said power bridging member comprising a knife-like contact and a resilient fork-like contact, the contacts being provided alternately on the lateral faces of the bus terminals and engaging one another in the transverse direction when the bus terminals are mounted on the support rail.

**C. Claim 3 of the '241 Patent**

The I/O device as set forth in claim 2, said power bridging member forming the end-pieces of a bar-like flat rail which extends internally through the individual bus terminals and the bus terminal blocks.

**D. Claim 4 of the '241 Patent**

4. An input/output device for a data bus, said device being locatable on a support rail, and positioned adjacent other such devices, said device having terminal points for the parallel wiring of bus parts, and having an electronic means which connects parts to a serial data bus line, wherein the improvement comprises:

>configuring the device as series terminals having an incorporated or mountable electronic means, such device being locatable on the support rail in a manner known per se as separate individual terminals or in a group of several as a terminal block;

>data bus lines and power supply lines for the electronic means being incorporated in bus terminals and being slipped therethrough, each individual bus terminal and each bus terminal block having pressure contacts in lateral faces thereof which extend towards adjacent terminals;

>bus contacts automatically contacting one another in the series direction of the bus

terminals when the bus terminals are located on the support rail so that the bus terminals which are located on the support rail are connected to transversing data bus lines and power supply lines to form a terminal bus;

power bridge members for providing power to the parts communicating with the terminal points of the bus terminals, said members being fixedly disposed on the lateral faces of each bus terminal and each bus terminal block and engaging automatically one another when the bus terminals are mounted on the support rail, each bridging member comprising a knife-like contact and a resilient fork-like contact, the contacts being provided alternately on the lateral faces of the bus terminals and engaging one another in the transverse direction when the bus terminals are mounted on the support rail.

*See* Am. Compl.¶¶36-9.

In its Answer (ECF DKT #29), Rockwell asserts as an affirmative defense that the '241 Patent is invalid under 35 U.S.C. § 112.  *See* Answer ¶66.  According to Rockwell, Claims 1 and 4 of the '241 Patent impermissibly mix "method" and "apparatus" elements, and consequently Claim 1, and its dependent Claims, and Claim 4 are invalid for indefiniteness under *IPXL Holdings, L.L. C. v. Amazon.com, Inc.,* 430 F.3d 1377 (Fed.Cir.2005).  Mem. 9.

## II. STANDARD OF REVIEW

Because this case arises under an "Act of Congress relating to patents," 28 U.S.C. § 1338(a), the law of the Federal Circuit controls, *see* 28 U.S.C. § 1295(a)(1); however, the Federal Circuit applies the law of the "regional circuit" to procedural matters.  *See MicroStrategy Inc. v. Business Objects, S.A.,* 429 F.3d 1344, 1349 (Fed. Cir. 2005).  A motion

for judgment on the pleadings under Rule 12(c) is procedural; therefore, Sixth Circuit law applies. *See Merck & Co. v. Hi-Tech Pharmacal Co.,* 482 F.3d 1317, 1321 (Fed. Cir. 2007) ("As with Rule 12(b)(6) motions, the question of whether a motion for judgment on the pleadings was properly granted is a purely procedural question not pertaining to patent law, to which this court applies the rule of the regional circuit.").

After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. Fed. R. C.iv. P. 12(c). In this jurisdiction, "[t]he standard of review for a judgment on the pleadings is the same as that for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) . . . . We 'construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief.'" *Roger Miller Music, Inc. v. Sony/ATV Publishing, LLC,* 477 F.3d 383, 389 (6th Cir. 2007) (citations omitted). The Court's decision "rests primarily upon the allegations of the complaint"; however, "'exhibits attached to the complaint[] also may be taken into account.'" *Barany-Snyder v Weiner,* 539 F.3d 327, 332 (6th Cir. 2008) (citation omitted) (brackets in the original). Lastly, a Rule 12(c) motion "is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Paskvan v. City of Cleveland Civil Serv. Comm'n,* 946 F.2d 1233, 1235 (6th Cir. 1991).

### III. ROCKWELL'S MOTION

Rockwell has moved the Court for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). Rockwell posits that Claims 1 and 4 are "apparatus" claims that contain an impermissible "method" element. Specifically, Rockwell objects to the use of the

introductory phrase "configuring the device" in the claims. Mem. 7. The gravamen of Rockwell's argument is that use of a gerund to introduce a claim element "unequivocally implies an act in a method claim." Mem. 12. Rockwell goes so far as to declare, axiomatically, "[t]he difference between proper elements of an apparatus claim, on the one hand, and a method claim, on the other, comes down to grammar." Mem. 12.

## IV.  WVG'S OPPOSITION

Conversely, WVG argues that the use of the phrase "configuring the device" in the '241 Patent represents permissible functional language introducing the hardware characteristics of their device. Opposition 18. Furthermore, WVG offers several additional reasons for denying Rockwell's Motion. Initially, WVG argues that their pleading is sufficient because it conforms to one of the forms provided for in the Appendix to the Federal Rules. Opposition 11-13. They also contend that because a request for judgment on the pleadings relies solely on the Complaint and the attached patent, the record is insufficient to overcome the patent's presumption of validity. Opposition 13-14. Similarly, WVG believes that Rockwell's request is premature, as the Local Patent Rules dictate a sequence of events that expand the record prior to a claim construction ruling by the Court. Opposition 14-15.

## V.  LAW AND ANALYSIS

WVG argues that Rockwell's Motion should be denied due to the Complaint's conformity with Fed. R. Civ. P. App. B Form 18. Opposition 13. The Court finds this argument without merit. Rockwell's Motion does not challenge the sufficiency of the Complaint, it challenges the '241 Patent's validity under 35 U.S.C. § 112. Therefore,

conformity with Form 18 is irrelevant in determining whether the '241 Patent is invalid for indefiniteness.

Rockwell's Motion requires a two-step examination. As a threshold issue, the Court must determine whether the law allows for a determination of indefiniteness based solely on the record available at this stage of the proceeding. If it does, the Court may determine whether the phrase "configuring the device," as it appears in the '241 Patent, dooms the claims as indefinite.

**A. Is the Record Sufficient to Overcome the '241 Patent's Presumption of Validity?**

WVG declares the law is clear: "A patent is presumed valid and the party moving for invalidity has the burden of establishing invalidity by clear and convincing evidence." Opposition 13 (citing *Parker-Hannifin Corp. v. Baldwin Filters, Inc.,* 724 F. Supp. 2d 810, 813 (N.D. Ohio 2010)). WVG concedes that "[w]hether a claim is invalid . . . for indefiniteness is a question of law," but argue the "disputed facts underlying the legal conclusion" of invalidity must be established by clear and convincing evidence. Opposition 5-6 (citing *Union Pacific Resources Co. v. Chesapeake Energy Corp.*, 236 F.3d 684, 692 (Fed. Cir. 2001), and *Newell Cos. v. Kenney Manufacturing. Co.,* 864 F.2d at 767 (Fed. Cir. 1988), respectively). WVG further offers multiple Federal Circuit cases standing for the proposition that claim indefiniteness is only found when a person of ordinary skill in the art could not determine the bounds of the claims. Reply 6-7 (*see, e.g., Halliburton Energy Services v. M-I LLC,* 514 F.3d 1244, 1249 (Fed. Cir. 2008) ("The common thread" in cases where the Federal Circuit has invalidated claims for indefiniteness "is that claims were held

indefinite only where a person of ordinary skill in the art could not determine the bounds of the claims, i.e., the claims were insolubly ambiguous.)).

Although not argued explicitly, it appears WVG believes that without claim construction, i.e., an expert explanation of "the meaning of terms as they are used in patents and as they would be perceived and understood in the field of invention" *Merck & Co. v. Teva Pharms. USA, Inc.,* 347 F.3d 1367, 1372 (Fed. Cir. 2003), a determination of indefiniteness is impossible. WVG offers:

> The record before the Court in the context of Defendant's Motion is inadequate to enable the Court to do what Defendant requests. "The record that the Court may consider on a 12(b)(6) [or 12(c)] motion — the complaint and the attached patent — is insufficient for the Court to construe the patent claims contrary to plaintiff's allegations of infringement and rule that it is invalid." *Progressive Casualty Insurance Co. v. Safeco Insurance Co.*, 2010 U.S. Dist. LEXIS 120225, *8 (N.D. Ohio 2010) (footnote omitted).

Opposition 14.

Conversely, Rockwell believes claim construction is unnecessary for a determination of indefiniteness – the record is sufficient because, simply, "[t]he claims say what they say. There is no need to decipher the meaning of the word 'configuring,' but rather only to determine the effect of WVG having used that word." Reply 3. Their belief is supported by case law.

In *Intellect Wireless, Inc. v. Kyocera Commc'ns, Inc.*, 2009 WL 3259996 (N.D. Ill. Oct. 8, 2009), the court considered whether claim construction is necessary for a finding of indefiniteness:

> Before addressing the merits of Kyocera's motion, the court first must consider Intellect Wireless's assertion that the motion automatically fails because Kyocera has made no attempt to construe the disputed claims. Without the requisite claim construction, Intellect Wireless argues, Kyocera cannot meet its

> burden of proving that the claims at issue are insolubly ambiguous to one of ordinary skill in the art. The court, however, finds that determining whether the '186 and '416 Patents impermissibly claim mixed subject matter does not require claim construction.
> 
> Although many of the district courts addressing this issue rendered their indefiniteness decisions either after or concurrently with the claim construction phase of the litigation, those decisions typically do not invoke or rely upon claim constructions. Moreover, neither *IPXL Holdings* nor *Microprocessor*, the only Federal Circuit decisions to date addressing mixed subject matter claims, indicates that claim construction is a prerequisite to judicial determination of invalidity due to indefiniteness. Consequently, the court finds that it can resolve the legal issue presented in Kyocera's motion without construing the patents' claims beyond their plain and ordinary meaning.

*Intellect Wireless* at *3 (citations omitted) (footnote omitted).

Rockwell also persuasively distinguishes WVG's citation of *Progressive* (offered in support of the proposition that the record is insufficient at this early stage to construe claim terms) from the present case by observing *Progressive* "dealt with a different statutory basis of invalidity (35 U.S.C. § 101 (patent eligible subject matter)) than the case at bar (35 U.S.C. § 112 (indefiniteness)). Determining whether a claim contains patent-eligible subject matter would likely always require claim construction because the question goes to what has been claimed." Reply 4. Given that the issue before the Court does not concern a dispute over the '241 Patent's subject matter eligibility, the Court declines to rely upon *Progressive.*

The Court does not find an expansion of the record is necessary, either as a matter of law, or to construe the meaning of "configuring the device" as it appears in the '241 Patent. Therefore, the Court finds the record is sufficient to definitively determine whether the disputed claims are indefinite.

**B. Does Rockwell's Motion Circumvent Local Patent Rules?**

In a similar vein, WVG argues that engaging in claim construction at this stage of the proceeding would circumvent Local Patent Rules. Opposition 14-15. WVG again leans heavily upon *Progressive* for the proposition that a Rule 12 motion is premature. However, the Court has already found that case to be distinguishable. On the other hand, WVG correctly points out that the Local Patent Rules "provide for the parties to identify material claim construction disputes, present such disputes to the Court in an orderly fashion with all of the available evidence, and achieve an informed decision." *Id.* In short, the Rules outline a procedure for the presentation and evaluation of evidence to determine the meaning of *disputed* terms.

In this case, there are no disputed terms. "Configuring the device" is not purported to have specialized meaning to a person of ordinary skill in the art. Rockwell asserts, and the Court agrees, the term at issue is clear; the dispute is over the effect of that term, i.e., does use of a gerund automatically denote a method element? *See* Reply 6 fn2. Therefore, the Court finds that in the absence of a disputed term, ruling on a 12(c) motion does not circumvent the Local Patent Rules.

**C. Does the '241 Patent Contain Mixed Subject Matter in Violation of 35 U.S.C. § 112?**

Rockwell contends the '241 Patent violates a "simple, but fundamental, principle of patent law: a single patent claim can cover a device or it can cover a method, but it cannot cover both." Mem. 1. This principle was made law in *IPXL Holdings L.L.C. v. Amazon.com, Inc.* 430 F.3d 1377, 1384 (Fed. Cir. 2005) (holding that a single claim containing elements directed to both an apparatus and method is

invalid).  Furthermore, the Federal Circuit reaffirmed the rule within the last year, stating that "'reciting both an apparatus and a method of using that apparatus renders a claim indefinite under section 112, paragraph 2.'" *See Rembrandt Data Techs., LP v. AOL, LLC*, 2011 WL 1458662, at *7 (Fed. Cir. Apr. 18, 2011) (quoting *IPXL Holdings*, 430 F.3d at 1384).

WVG and Rockwell agree the '241 Patent is purported to be an apparatus, specifically "[a]n input/output device for a data bus." However, in Rockwell's view, all of the claims of the '241 Patent are invalid for indefiniteness under *IPXL Holdings*. Specifically, Rockwell objects to the use of the phrase "configuring the device" in Claims 1 and 4.  Rockwell argues that use of the gerund, "configuring," "unequivocally implies an act in a method claim."  Mem. 12 (citing *Nikon Corp. v. ASM Lithography B. V.*, 308 F. Supp. 2d 1039, 1065 (N.D. Cal. 2004)).  In Rockwell's view "'configuring the device' is directed to a user action, not the device's capabilities."  Rep. 7.  Furthermore, Rockwell argues "the same problem infects claims 2 and 3, both of which are dependent on defective claim 1 (claim 2 of the '241 Patent is dependent on claim 1, and claim 3 is dependent on claim 2).  *See, e.g.*, *Ariba, Inc. v. Emptoris, Inc.*, 2008 WL 3482521, at *8 (E.D. Tex. Aug. 7. 2008) ('Because claim 31 recites both an apparatus and a method, it is indefinite and therefore invalid under 35 U.S.C. § 112(2). Its dependent claims, claims 32-36 and 38, are likewise invalid.')." Mem. 8-9.

WVG states that Claims 1 and 4 "must be read in view of the specification of

which they are a part." Opposition 17 (citing *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995)). In light of the specification (ECF DKT #12-1), WVG offers an alternative reading of "configuring the device":

> . . . it is apparent even without undertaking to construe Claims 1 and 4 that the "configuring the device .. ." requirement does not provide a method of using the claimed apparatus but instead describes a feature of the claimed apparatus whereby "the I/O devices are configured as series terminals having an incorporated or mountable electronic means . . . ." (Dkt.12-1, '241Patent, col. 2, ll. 13-15) The specification contradicts any construction to the effect that the "configuring the device .. ." requirement provides a method of using the claimed apparatus.
> The term "configuring the device .. ." in the '241 Patent is functional language describing hardware characteristics of the claimed invention. "[A]pparatus claims are not necessarily indefinite for using functional language." *Microprocessor Enhancement Corp.*, 520 F.3d at 1374 (citing *Halliburton Energy Services v. M-I LLC*, 514 F.3d at 1255).

Opposition 18.

A similar dispute was resolved in *Collaboration Properties, Inc. v. Tandberg ASA,* 2006 WL 1752140 (N.D. Cal. June 23, 2006). In *Collaboration Properties,* the defendant argued that the phrase "configured to" injected a method step into a purported system claim. *Collaboration Properties* at *6. The court rejected that argument:

> Tandberg's position is incorrect because the disputed claim language recites the functionality of the claimed system rather than the act of using the system. The problematic claim language in *IPXL Holdings* required that "the user uses the input means" to perform certain functions-an act. The language in the claims of the asserted patents, in contrast, requires that the system be "configured to" perform certain functions when it is used-a statement of functionality.

*Collaboration Properties* at *6.

Although Rockwell argues "the language in the '241 patent specification states 'the I/O devices are configured,' that is, the past tense of the action of configuring, an

-12-

action undertaken by a person" (Rep. 7), the Court is not persuaded. Like the court in *Collaboration Properties*, this Court finds that the use of the gerund phrase "configuring the device" in the '241 Patent is permissible functional language. It speaks to the modularity of the apparatus – a hardware characteristic – rather than an act performed by a person.

## V.  CONCLUSION

In the Court's judgment, the record is sufficient to determine the plain meaning of the phrase "configuring the device" as it appears in the '241 Patent. Rockwell's objection to the phrase is well-founded – it almost certainly reflects sub-optimal drafting. However, the Court is not convinced sub-optimal drafting automatically denotes mixed subject matter and indefiniteness. In the Court's view, the '241 Patent's use of "configuring the device" reflects functional language describing hardware characteristics of the device, not a method of using the device. Therefore, Rockwell's Motion is DENIED.

**IT IS SO ORDERED.**

**DATE: _March 7, 2012_____**

　　　　　　　　　　　　　　　　　　　　　　　**S/Christopher A. Boyko**
　　　　　　　　　　　　　　　　　　　　　　　**CHRISTOPHER A. BOYKO**
　　　　　　　　　　　　　　　　　　　　　　　**United States District Judge**