Page 1

```
       IN THE DISTRICT COURT OF THE UNITED STATES
          FOR THE NORTHERN DISTRICT OF OHIO
                   EASTERN DIVISION


WAGO VERWALTUNGSGESELLSCHAFT MBH,
WAGO KONTAKTTECHNIK GMBH & CO. KG,

                                    11CV756
         Plaintiffs,

    vs.                             Friday, March 15, 2013
                                    12:30 p.m.

ROCKWELL AUTOMATION, INC.,

         Defendant.


         TRANSCRIPT OF MARKMAN HEARING PROCEEDINGS
            BEFORE THE HONORABLE JAMES S. GWIN
                UNITED STATES DISTRICT JUDGE
```

**Carbo Decl., Ex. A**

```
 1   APPEARANCES:

 2
     For the Plaintiffs:       Jay R. Campbell, Esq.
 3                             Mark C. Johnson, Esq.
                               Renner, Otto, Boisselle & Sklar
 4                             1621 Euclid Avenue, 19th Floor
                               Cleveland, Ohio   44115
 5                             (216) 736-3170

 6
     For the Defendant:        Paul J. Tanck, Esq.
 7                             Gregory Carbo, Esq.
                               Chadbourne & Parke LLP
 8                             30 Rockefeller Plaza
                               New York, New York   10112
 9                             (212) 408-5100

10                             Steven M. Auvil, Esq.
                               Squire Sanders
11                             4900 Key Tower
                               127 Public Square
12                             Cleveland, Ohio   44114
                               (216) 479-8500
13

14

15   Official Court Reporter:  Susan K. Trischan, RMR, CRR, FCRR
                               7-189 U.S. Court House
16                             801 West Superior Avenue
                               Cleveland, Ohio   44113
17                             216/357-7087

18
     Proceedings recorded by mechanical stenography; transcript
19   produced by computer-aided transcription.

20

21

22

23

24

25
```

**Carbo Decl., Ex. A**

Page 18

1   block which has connection points for multiple bus parts or
2   as an individual terminal which is the individual bus
3   terminal which has connection points for only a single bus
4   part.
5              And then down below they say it again and
6   their expert says it twice in his opening expert report
7   so --
8              MR. CAMPBELL: Could I clarify?
9              We don't argue that an individual terminal can
10  operate more than one bus part. Both --
11             THE COURT: I'm sorry, you --
12             MR. CAMPBELL: We don't argue that it can't.
13             THE COURT: I'm sorry, you argue that it can
14  or can't?
15             MR. CAMPBELL: We agree a single bus terminal
16  operates only one bus part.
17             THE COURT: Okay.
18             MR. CAMPBELL: What we disagree with is their
19  definition of a bus part.
20             MR. TANCK: So to address that point, if I
21  may, Your Honor, we don't -- we tried to make this clear in
22  our brief. We weren't trying do conflate the meaning of
23  "Bus part."
24             Bus part, according to our expert, was not a
25  known term so we wanted to give some meaning, some

**Carbo Decl., Ex. A**

1                THE COURT:  Well, any kind of appliance,
2    though.
3                MR. CAMPBELL:  Well, anything that
4    could -- yes, anything that would be controlled by an I/O
5    module.
6                THE COURT:  Okay.
7                MR. CAMPBELL:  All right.  But our problem
8    with "Individual bus terminal" comes with where they try to
9    put it when they try to use it in the definition of a
10   terminal block, because they haven't defined it above.  When
11   they try to say that a terminal block is just a group of
12   these things, it's hard to say what that exactly means.
13               Moreover, that's inconsistent with the claim.
14   It's consistent with some of the embodiments, some -- I
15   think Figs. 2 and 3 show individual terminals stacked
16   together, but that's not what the claim reads, that's not
17   what the prosecution history says, and the patent is broader
18   than that.
19               So if we go to Claim 1.
20               THE COURT:  Wasn't that the real genius of the
21   invention, that you could stack them?
22               MR. CAMPBELL:  Yes, it is.  That it's -- well,
23   the genius of the invention isn't that individual terminals
24   are necessarily stackable, it's that these I/O modules are
25   stackable.  And an I/O module can be a bus terminal like

**Carbo Decl., Ex. A**

1  of this.
2           What Rockwell argues is that you need a
3  separate computer for every line, a separate electronic
4  means for every line of terminal points.
5           What Wago says, which is consistent with
6  Claim 1, is that you only need a single electronic means
7  inside of a terminal block even if it's controlling more
8  than one bus part.
9           That's what Claim 1 says.
10          The experts agreed in depositions that you
11  don't need more than one electronic means to control more
12  than one bus part, and in fact the patent states that.
13          If we go to the words of the patent, it says
14  "The object is achieved, according to the invention, in that
15  the I/O devices are configured as series terminals having an
16  incorporated electronic means."
17          Again the I/O device can be this device I'm
18  holding in my hand, which is a terminal block.  So in other
19  words, it can have several rows, two, three, more, of these
20  rows of terminal points, meaning it can operate four or five
21  different bus parts, if this is a terminal block, through
22  one electronic means.
23          There's no reason to put the separate
24  electronic means for every device you want to control.  It
25  would be redundant, it would be inconsistent with what the

**Carbo Decl., Ex. A**

1  claim says, what the invention says.
2              And if we go again to the prosecution history,
3  the prosecution history says "A terminal block."
4              THE COURT:  Well, how did Beer set up in terms
5  of the electronic means?  How was Beer -- did they have, you
6  know, a number of separate terminals that were controlled
7  by -- by one electronic means or one computer?
8              MR. CAMPBELL:  Yes, it could have been.
9              THE COURT:  But then I thought that was --
10             MR. CAMPBELL:  No, the --
11             THE COURT:  That's the --
12             MR. CAMPBELL:  I mean how -- the collection of
13 these parts are how we are different than Beer, but we never
14 argued that the difference between our invention and Beer is
15 just because we have more than one electronic means.
16             The difference between our invention and Beer
17 is that you configure this thing, this terminal block, to
18 have electronic means to fit on a rail and to automatically
19 pass power, field power, load power when you connect them
20 together in series.
21             THE COURT:  Okay.  Let me afford him -- let me
22 ask you to wait just a second.
23             How do you -- so going to Column 2.
24             MR. CAMPBELL:  Of the patent?
25             THE COURT:  Yes.  Line 36.

**Carbo Decl., Ex. A**

1              MR. CAMPBELL:  Well, because Claim 1's more
2    general.  Because Claim 1 doesn't say "Knife and fork," it
3    says "Pressure contact" or "Bus contact" which could include
4    a knife and fork contact or various other types of pressure
5    contacts.
6              Dr. --
7              THE COURT:  I'm sorry, am I missing the
8    understanding of claim differentiation?
9              I thought claim differentiation was that if
10   you have a more narrow description in the dependent claim,
11   it by its nature suggests that that more narrow description
12   or narrow element had not earlier been included in the
13   independent claim.
14             MR. CAMPBELL:  No.  Actually claim
15   differentiation means if you have a narrow dependent claim,
16   the independent claim must be broader and must include that
17   and other things.
18             So "Pressure contact" must include "Knife and
19   fork," it must include "Contact tabs," it must include
20   various other things.
21             Mr. Zatarain, Rockwell's expert, said that a
22   knife and fork is a type of pressure contact.  He said a
23   spring is a type of pressure contact.  And those were all
24   obvious variants.
25             So what Claim 2 says is that Claim 1 must be

**Carbo Decl., Ex. A**

1  broader than just a knife and fork contact. It can include
2  knife and forks, it can include pressure tabs, it can
3  include anything else that fits within that broad definition
4  of pressure contact.
5          THE COURT: Okay.
6          MR. CAMPBELL: So where the parties really
7  have a problem has nothing to do with the series direction.
8          Our claim construction talks about contact in
9  the series direction. The problem is they try to insert the
10 word "Pressure." "Pressure in the series direction."
11         Well, the claim doesn't require that. And in
12 fact, the experts have agreed that a knife and fork contact
13 still is a pressure contact. It connects in the series
14 direction. It just doesn't exert pressure in the series
15 direction, at least a significant one.
16         So when you combine a terminal block with
17 another terminal block, the knife and fork contact,
18 these -- those pressure contacts, and you push them
19 together, they connect in series. And that's what the
20 patent talks about is connecting in series. It doesn't talk
21 about the pressure.
22         Sure, knife and fork contact may have pressure
23 in different directions than a contact tab, but the claim,
24 of course, doesn't say "Contact tab." The claim says
25 "Pressure contact" or "Bus contact," which all the experts

**Carbo Decl., Ex. A**

1  element can have a functional description, too.

2              THE COURT: I thought you just said it's

3  something that bridges.

4              MR. CAMPBELL: He said it's a structure that

5  bridges.

6              I asked him --

7              THE COURT: Isn't his definition kind of a

8  functional definition?

9              MR. CAMPBELL: He says it's a part of an

10 assembly that's responsible for carrying shared power

11 amongst two devices. A part of an assembly. A part of an

12 assembly is a structure. A power bridge is a structure.

13             The claims talk about what the power bridge

14 can be. The claim does not say "Means for."

15             THE COURT: It doesn't, and that works to your

16 benefit, but I'm still somewhat lost in terms that most of

17 the language talks about functional language as in contrast

18 to structural language.

19             MR. CAMPBELL: Well, it is somewhat

20 functional, I agree, but it does have adequate structure and

21 according to the Fed. Circuit all you need is adequate

22 structure.

23             We also know that it can't be --

24             THE COURT: Where in the patent does it

25 describe what the structure of this bridging member is?

**Carbo Decl., Ex. A**

1  of how does this fit in on this modularity issue where if
2  you have a bent rail, doesn't that undercut the great
3  benefit of having these kind of modular where the connecting
4  points are always in the same position?
5              MR. CAMPBELL:  Not at all, Your Honor.
6              No, not at all, because the flat rail could be
7  bent inside of here and in any contortion as long as the
8  knife and the fork contact still meet.  It doesn't matter
9  what the arrangement is.
10             In fact, this is flat and bent.
11             THE COURT:  These are all pretty narrow
12 though.  Why would you ever -- why would you ever bend them
13 within the actual bus?
14             MR. CAMPBELL:  Well, you could or you don't
15 have to.
16             And, in fact, I would suggest that the reason
17 that they're trying to read limitations that aren't even in
18 the patent spec but only in the -- if we go to the next
19 one -- only in the drawing is that their infringing device
20 has a flat bar-like rail but it has a bend in it.
21             THE COURT:  Okay.
22             MR. CAMPBELL:  So --
23             THE COURT:  Surprise, surprise.  (Laughter).
24             I am shocked that they would have proposed a
25 construction that could help them.

**Carbo Decl., Ex. A**

1  in the last year.
2          THE COURT: But I mean, did he have much
3  briefing on claim construction on that?
4          MR. TANCK: No.
5          MR. CAMPBELL: Well, they argued you didn't
6  need to construe it because they said the claim itself is a
7  gerund, and if there's a gerund, it must be a methods step.
8          And they argue in their brief on Page 17 that
9  their claim construction is a method step, so what they are
10 trying to do is just basically take our construction, write
11 it as a method step to invalidate the claim, something the
12 Judge already said was improper, something which we
13 shouldn't do on claim construction.
14         And in fact, if you look at the patent, the
15 patent rephrases this language just how we say it, it says
16 "configured," "adapted."
17         In other words, this device is designed in
18 such a way to have the functional attributes. One of those
19 functional attributes is that you can put it next to another
20 device. That's one of the key attributes. But it doesn't
21 have to be next to another device and you can't construe it
22 as a method step. It's talking about the functionality of
23 it, how it's adapted, how it's designed.
24         It's designed so that it has a certain
25 functionality which is being able to configure it in series

**Carbo Decl., Ex. A**

1  would, but they said "The lines."
2              And I think there's a benefit to that because
3  when you're plugging and unplugging these things, you can
4  affect and maybe you want to break the connection in the
5  line, so by pulling it out you're affecting it.
6              I don't know why they chose "line," but all
7  the diagrams, all the figures contemplate a line actually
8  passing through, and that's what the claim language says.
9              THE COURT:  Okay.  Well, let me hear from the
10 plaintiff.
11             MR. CAMPBELL:  Well, Your Honor, when
12 Mr. Tanck repeatedly told you how the invention works, he
13 just says "passed therethrough."  Lines are passed through,
14 and we're okay with that.  That's our definition.
15             The thing he's adding is "connection."  The
16 problem is connection, unbroken connection, that's not
17 disclosed anywhere in the patent.
18             The patent talks about, especially in I think
19 this is Column 4, yeah, Column 4, 7 through 17, that these
20 data bus lines come in from one end, you know, through one
21 of these, comes in through that, connects to the I/O means,
22 runs through the I/O means and then connects again through
23 the I/O means to the other side.
24             So in other words, it's not an unbroken
25 connection.  By its very nature it has to go through this

**Carbo Decl., Ex. A**